This is our first case of the morning. Harlem Consolidated School District versus Harlem Federation of Teachers Local 540. Will counsel for the appellant introduce themselves. My name is Eric Carter and I'm here on behalf of the School District 122. Thank you. Good morning. My name is Valerie Quinn and I'm here on behalf of the Illinois Educational Labor Relations Board. Thank you. You may proceed. Good morning, Your Honors, and may it please the Court. This case involves a public school district's unintentional failure to collect union dues on two separate occasions in August of 2020 and August of 2021, and whether, based on these innocent mistakes, the Illinois Educational Labor Relations Act requires the district to pay those dues, which were never collected with public funds. Okay, let me stop you for a second. You've used some operative words from your perspective. Is there any hint, anywhere in this case, that this was done purposefully? There is no evidence of that in the record, nor has it been argued by the opposing side. The labor board's order, which requires the district to spend public funds on a private debt owed by union members to the union, should be reversed for three main reasons. First, the labor board did not have jurisdiction over this dispute because the union did not timely file its unfair labor practice charge. Second, the labor board erroneously concluded that the district violated Section 14A5 of the Labor Act, even though the evidence unequivocally demonstrates that the misdeductions resulted from an unintentional clerical error and that there was no bad faith motive or intent. Third, even if the district's actions could be construed as an unfair labor practice, the labor board's order should still be reversed because it imposed an unlawful remedy. And I'd like to begin by discussing the jurisdiction issue. As indicated, the labor board's decision should be reversed because it did not have jurisdiction over the union's unfair labor practice charge in this case. Section 15 of the Labor Act states that no order shall be issued upon an unfair practice occurring more than six months before the filing of the charge alleging the unfair labor practice. That six-month filing period is not just a statute of limitations, it is a jurisdictional requirement. As a result, the labor board cannot exercise jurisdiction over unfair labor practice charges which are not timely filed. The six-month filing period begins when the charging party became aware, or should have become aware, of the actions which allegedly constitute a violation of the Labor Act. More generally, they don't have to have knowledge of what the legal implications necessarily are of those actions. They simply have to be aware, or should be aware, of the actions themselves. And we know about the pay stub question. I want to ask a question, though, from a different tack. The union said, well, we don't even handle these. It apparently goes straight to the federation. Can they remove themselves from this jurisdictional question simply by saying, well, we don't handle those. We don't have anything to do with when the deductions come and where they go. That's all something that the district and the union deal with directly. I would say no, and I would say no for two reasons, Your Honor. First, the fact of the matter is that it's the Harvard Federation of Teachers that is bringing the claim for these funds. And as a result, they are obligated to establish jurisdiction with respect to their claim. And the fact of the matter is that under the section 11.1 of the Labor Act, not only is there an obligation to deduct dues, but also there is the obligation to remit those dues within 10 days after the deductions occur. And based on that requirement, the union unquestionably was on notice when it never received the funds that there was some issue, whether it's because they had not been deducted, which is what actually happened here, or if it's because they were deducted but not remitted. Regardless, 10 days after those missed deductions, which was August 14, 2020, and August 13, 2021, at minimum within 10 days after that, there's knowledge for purposes of establishing jurisdictional, the accrual of the claim, I guess. And I would further note that I think the pace of issue is still important. Once again, the Harvard Federation of Teachers can't absolve themselves of establishing jurisdiction for purposes of the claim that they're asserting before the labor board and before the court. And they unquestionably, every single member of the Harvard Federation of Teachers received a pay stub showing that no deduction was made. They chose the deduction schedule that was chosen by the union. And so the executive leadership of the union, as well as the organization itself, had knowledge of when those deductions should have been made. They were provided information in the union that no deductions were made. And moreover, once again, they never received any payment within that 10-day time period after the deduction should have been made. And so there was plenty of information available to them for which they should have been made aware. Who wanted to switch the deduction schedule from 15 to 20? The union, Your Honor. Who asked when the deduction should occur? There was a discussion back and forth between the parties, but ultimately the union, the evidence shows, is the one that requested this particular schedule that went into effect. The schedule that the union wanted began in about the first deduction over the course of the school year began in about October. And they were only doing deductions on the first and second pay periods of the month after that. If there was three pay periods in a month, they were never doing a deduction on that third pay period to avoid having three deductions in a single month period. That was the schedule that was requested by the union. And as a result, it caused the deductions to be made later on into the summer months, which is, this was the first time there had ever been deductions made during that time period. And so there was just some procedural hiccups. Obviously, it was a clerical error is what the evidence shows that caused the misdeduction at issue. Were these bargained for? It was agreed upon by the parties as part of the CBA. The CBA does not say what the schedule is, if that's your question. The CBA does not say that, but certainly there was communication both orally and in writing regarding what the schedule was going to be between the parties to the CBA. So this is an accommodation by the district. It is not a bargain for requirement. Correct. Obviously, there was a bargain for it. There is a provision in the CBA which says similarly to what section 1.1 that we're going to deduce, but the schedule itself, I do not believe that was in the CBA. So I'm going to correct you on that. So for the reasons that I've discussed here, the union was on notice that it should have I was on notice that the deduction was missed and that no funds were remitted. And as a result, the six-month clock began in August of 2020 for the first misdeduction and August of 2021 for the second misdeduction. They do not file their claim until April of 2022. That's 20 months after the first misdeduction and eight months after the second. That's beyond the six-month jurisdictional filing period. And for those reasons, we would ask that you reverse the Labor Board's decision because it did not have jurisdiction over the claim. The second issue that I want to get into then is the substantive merits of the unfair labor practice charge, setting aside the jurisdictional issue. The district did not violate section 1485 of the Labor Act when it inadvertently neglected to collect union dues from two pay periods which took place 12 months apart. Section 11.1A and section 11.1B of the Labor Act require educational employers to deduct and remit union dues. As I indicated earlier, the Parties Collective Bargain Agreement also had a similar obligation. In turn, section 11.1F provides that the failure of an educational employer to comply with those obligations, quote, shall be a violation of the duty to bargain and an unfair labor practice, end quote. The Labor Board acknowledged in its final order that section 11.1F does not create a stand-alone unfair labor practice. And the Labor Board's ultimate determination was that by violating section 11.1's requirements to deduct or remit union dues, the district violated section 14A5 of the Act. Section 14A5, which creates the actual unfair labor practice at issue in this case. Come back up just a second and I apologize. When the Board said that the new section 11.1F did not create a stand-alone unfair labor practice, what does that mean to you? To me, that says you have to read it in concert with what the actual unfair labor practice is, which is 14A5. And so the duty to bargain in good faith is the obligation that is imposed by section 14A5. And the failure to bargain in good faith is the unfair labor practice at issue. And by using that language, referring to the duty to bargain in section 11.1F, the legislature was declaring that if you were going to consider there to be an unfair labor practice arising out of the action of failing to deduct or remit union dues, it was going to be considered within the context of a 14A5 violation regarding the duty to bargain in good faith. And the Illinois case law is clear that good faith bargaining is assessed upon a review of the circumstances. The circumstances surrounding a specific case are part of the subjective criteria examined in determining if bargaining has been in good faith. And to succeed on a 14A5 claim, as I indicated, a union must show bad faith motive or intent based on the totality of those circumstances. Now, there are no agency or court opinions prior to this one addressing section 11.1F. However, throughout our briefing, both before the labor board and before this court, we outlined two state labor board decisions which address an employer's failure to deduct dues and whether that arises to a violation of the duty to bargain within the context of section 10A4 of the Public Labor Relations Act, which is an analogous provision to 14A5 in the Education Labor Relations Act. In the Chicago Park District case that we cited too, the local panel of the Public Labor Relations Board, the State Labor Relations Board, found that there was no unfair labor practice based on the failure to deduct dues based on a number of factors that they considered in that case. The facts included that the employer, it was determined, made a sincere effort to work with the charging party to discover and remedy the discrepancies which caused the misdeductions. The panel looked at the fact that the workforce in that case was in flux, which created some challenges in processing the proper deductions. And the employer showed a willingness to work with the union rather than an obstinate refusal to recognize or correct any issues. That's one end of the spectrum where looking at the totality of the circumstances, the board determined that there was no unfair labor practice. And we also cited too the Markham Professional Firefighters case, which kind of sets forth the other end of the spectrum. And the facts of that case are significantly more egregious than those in Chicago Park District and than those in this case. In that case, which was a non-presidential decision, the employer failed to timely remit dues for a continuous nine-month period. And notably, the employer in that case was deducting the dues and then simply not remitting them in a timely manner to the union. So it was taking the employee's money and then simultaneously it was withholding it from the union for an extended period of time. The egregiousness of those facts is plainly distinguishable from what we have here. And the facts of our case are much more analogous to those in the Chicago Park District case that I first talked about. Here, there was no intent. This was an unintentional clerical error. That's what the undisputed facts show in this case. The district has and continues to deduct and remit all dues outside of those two missed pay periods that were mistakenly not deducted. Can I ask, when the errors were found, what was the district's proposal? So the district had a multi-part proposal. The first was that they offered to bring employees who still remained with the school district as employees who they had the capability of deducting dues from. They offered to do two separate deductions for those employees to make up for the two missed ones. And they offered to do it over pay periods when there was not already a deduction. So there was never going to be a double deduction in a given pay period. They were going to spread it out. It could have been earlier in the year. It could have been a third pay period in a month. But regardless, they offered to do two extra deductions with respect to employees who were no longer employed, and therefore the district no longer had the ability to deduct wages from paychecks. As a settlement offer of the matter, they offered to pay the union for those outstanding amounts. As to that first part, would that have resulted in any employee paying more than they would have otherwise paid had the deductions been made in a timely fashion?  An executive member of the union's board acknowledged such at the hearing that if another deduction was made, the employee would actually be in the situation that they would have been in the first instance had they been deducted originally. As to the second part, how was that to be paid? It would have been paid, but I think you're getting at your honors. It would have been paid with school district funds, of course. Wasn't that kind of torpedo your third issue? Respectfully, your honor, I think it's distinguishable in terms of that was a settlement offer. I mean, obviously we're sitting here. We've now spent how much? Well, you're saying that it's unconstitutional. So if it's unconstitutional, it's unconstitutional whether it's a settlement offer or whether it's a resolution. I think that it is blindness, your honor. I think it's distinct, but even if you take out the constitutionality of it, that still doesn't get around, which I'll get to later in my presentation, the fact that the labor board's remedy that they imposed would still be an unlawful penalty against the district. So I think there's multiple issues with the remedy, even setting aside the constitutionality of it. But certainly, I mean, your honor, we did offer to pay those outstanding amounts. As indicated, I think that that's a settlement opportunity that we were able to. We're trying to avoid the cost of litigation, basically, which was unsuccessful. And now we've spent however much in taxpayer funds defending lawsuits that we don't have to pay. And the reason it was declined was? The union's response was that we have to pay it under Section 11.1F. And that's, you know, they weren't going to pay the money. The union was not going to pay the money. So to sum up kind of what I was just going over, which is that the Chicago Park District case is much more analogous factually in terms of what we have here, demonstrating that there was no bad faith intent, and without that, there was no 14A5 violation. The labor board contends that those cases are irrelevant because they predate the legislature's adoption of Section 11.1, specifically the labor board suggests that motive is irrelevant under Section 11.1, and therefore that preexisting opinions which analyze motive or intent in duty to bargain cases are no longer relevant to the analysis of a misdue's case that we have here. Thus, although the labor board paid lib service to Section 14A5 in suggesting that 11.1 does not create a standalone ULP, it's evident from the content of the labor board's final order and its response brief in this appeal that what it's essentially asking the court to do is to view Section 11.1F in isolation while ignoring Section 14A5 and decades of Illinois and agency jurisprudence interpreting it. That would be erroneous. Section 15 of the Labor Act provides the labor board with jurisdiction to adjudicate unfair labor practice disputes, and Section 2 of the Labor Act defines what an unfair labor practice is, and it defines it as any practice prohibited by Section 14 of this Act. When the legislature adopted Section 11.1, it did not add a new subsection to Section 14 through which it said that the failure to deduct and remit union dues is an unfair labor practice categorically. It did not do that. It could have done so, and it clearly knew how to create new standalone unfair labor practices under Section 14. As for the same public act, it did create two new unfair labor practices, but it did not do that with the dues deduction and remission issue. Instead, it said that a violation of Section 11.1 constitutes a violation of the employer's duty to bargain. As already discussed, the duty to bargain in good faith is derived from Section 14A5 and a violation that requires bad faith intended or motive. Now, when a legislature adopts a new statute, it is presumed that the legislature is aware of prior court opinions. Thus, as a matter of statutory construction, it is presumed that the legislature knew of and understood what a Section 14A5 violation requires when it made an explicit reference to the duty to bargain in the statutory language of Section 11.1F. Thus, contrary to the labor board's argument, the plain language of the statute does not show an intent to get rid of any motive or intent requirement. Rather, the reference to the duty to bargain demonstrates that Section 11.1F must be read in concert with Section 14A5 and the manner in which that section has historically been interpreted. If the labor board's interpretation is followed, that would result in essentially a strict liability unfair labor practice for the failure to deduct and remit new dues. That would be improper for multiple reasons. First, the labor board's interpretation is divorced from Section 14A5 and as a result, it would result in Section 11.1 being a stand-alone unfair labor practice. The labor board is only permitted to adjudicate unfair labor practices which are statutorily defined and required to be included in Section 14. Second, contrary to the labor board's propositions, the practical import of its interpretation is a strict liability offense. But there's no public policy reason or legislative finding which requires the imposition of strict liability against the district and accordingly, there is no basis from which the labor board could construe or enforce Section 11.1 as creating a strict liability offense. Are there other strict liability offenses within the act? To my knowledge, and I don't think I'm forgetting, I'm not aware of any off the top of my head, Your Honor. Are there any other per se violations? Once again, I don't have the list in front of me, but off the top of my head, Your Honor, I'm not aware of any. I don't believe there are. It's a totality of circumstances. What we're being asked to do is to carve out a strict liability, however you call it. The board, you know, danced around it in their interpretation. They just didn't want to use the term strict liability. That would be the practical import of what they're doing, yes. That's what they're doing. They're saying that it's a standalone one that is separate from 14A5 and there's no motive or intent according to them, and so they're asking for a strict liability. Under a circumstance that was precipitated by the union's request to have their pay in this fashion, under this schedule, and was never discovered even with everybody receiving pay slips. That's correct, Your Honor. And which they acknowledge was a mistake. Yes, Your Honor. Okay, go ahead. I see my time is up, so I'll move on. We'll hear from you on your rebuttal. Go ahead, Your Honor. Good morning, Your Honors. Rather than placing the burden on the individual employees to ensure that their deduction requests are correctly processed, the legislature chose to place that responsibility on the two parties, both who were most able to carry out that task correctly. That is, on the one hand. I don't think anybody's arguing that it should be placed on the employee. In fact, it was the federal case that took care of that. Well, actually, the district has been arguing that the individual employees were remiss because they didn't notice the amounts in their checks. That's only as to notice. As to notice for jurisdiction, Your Honor. And since the district spent a lot of time on jurisdiction, I would like to point out that neither party was aware of the district's mistake until October of 2021. That is a fact found explicitly by the board. Can the union claim negligence just or can the union claim ignorance simply by saying, you know, we just don't handle that. We don't handle that. Within the circumstances and the facts of this case, Your Honor, this is what's so great about oral argument because when I was reviewing the record to come down here, I noticed something in the testimony. The district's witness testified that 2020 was the first year that the district decided to eliminate having 22 pay periods per year. Back when they had 22 pay periods per year, this is on page I think it's 19 of the report procedure. Let me back up then. I want to see if we're talking about the same thing. Did the union request this pay schedule? Absolutely. They request this deduction schedule. They did not request a 26 per the district. The deduction schedule. That year decided to issue 26 paychecks instead of 22. And as Mr. Horan testified, they couldn't have done 20 deductions on the old 22 pay schedule. Is the court following me on this? Because you can't have three deductions in a month. I beg your pardon? Because for one reason, you can't have, not that you can't, that you, the union, didn't want three deductions in a month, right? Because that's more money out of the employee's check. Well, it had never been, they had never done 20 deductions on the 22. This was the first year the union asked for it, and they could only ask for it because the district had just gone to 26 pay periods per year. And it had never before been. There was that little COVID thing. Well, there was that little COVID thing, and we have all memory of how much chaos that caused. So you've got a new schedule for the paychecks. You've got a new schedule for the deductions from those paychecks. So you're reinforcing the fact that this was all an inadvertent error. It was all an inadvertent error. And this isn't anybody's fault. So, also, the employees, because, especially during COVID, they sub for each other, right? If they can't get substitutes, I mean, this I'm drawing on from my knowledge of school districts generally. Teachers get a little bump in remuneration if they've covered somebody else's class because we couldn't get subs, which was really hard during COVID. And so the teachers don't get the same amount in their paycheck every time. And there was no pattern. They never had paychecks in August, as far as I know. So they didn't know that there was something they should have expected in August. It would be $36 per pay period less. I'm sorry? If your deduction had occurred, it's $36 a pay period less. If you knew how much you were supposed to be getting, because if you sub for somebody and you had a bump in your pay for that, you don't get the… And that doesn't show up in the pay stub in a different line? Probably on a different line. But the checks were never for the same amount. And here's the other thing. Because of turnover, and there is turnover. People retired. People quit. People fired. People went out on leave. The union doesn't get the same amount of money every month disbursed to it. So it wouldn't have been able to say, whew, there's something funny about the amounts here because there wouldn't have been. It's a different amount every month based on staff turnover. So basically, to summarize, your notice occurs when the two employees get together, take the day off, and find the clerical error. Well, the thing is, what the case law says about what you should know and when you should know it is that you have to be aware that the other party acted. You don't have to know exactly how it's going to hurt you, but you do have to know that the other party did something. That's right in the Jones case and the Wappella case. And normally it isn't hard to figure out who did what, who should have known what when. It normally plays out in a scenario where, let's say, an education employee gets a letter, say, in December. You're going to be fired at the end of the school year. School year. End of the school year comes. They are terminated. If it's been seven months since they got that letter, they are untimely. Okay, you have to know that the other party did something. It's an unambiguous act that shows you, oh, boy, I better not sleep on my rights. I've got to do something here. But then they know about it because they knew of the new deduction schedule, and they agreed upon that. I thought that's what counsel said. Yes, counsel is correct. They agreed upon the new deduction schedule. But here we are. We have two parties. Okay, the union was charged with collecting the deductions and forwarding those payments to the union. It had all the information it needed to do that. And somehow the district didn't know that it had made 19 payments instead of the 20. And it didn't know it the following year. The district didn't know.  Nobody knew. We all agree. Everybody in this room agrees it was a mistake. Neither of them knew. It was a mistake, and nobody knew what the mistake was until November. They knew there was something going on in October, and that's when the executive, Lee Krippner, the union's witness, and Josh Oren, the district's witness, they got together. They had eight to ten meetings and phone calls trying to figure out what the heck happened. So get into the meat of why is this mistake an unfair labor practice. Because that is the plain language of the statute. The Section 11.1F says failure to do either of these two things is an unfair labor practice. It doesn't require. Which means it takes you back to 14, Section 14, correct? Well, most of the provisions in Section 14 do require some kind of mesrea, some kind of intent, some kind of union, anti-union, anonymous. This one doesn't. If it has to be considered an unfair labor practice, then that involves bargaining in good faith, correct? There's nothing. This mistake wasn't. The answer to the question is really easy. It's either yes or no. If you are bargaining over something, yes, Your Honor, you have to bargain in good faith. But the legislators set up a scheme here where there wasn't any bargaining over this 11.1F. Well, no. They set up a scheme where the board even says it's not a stand-alone provision. You have to look at 11 in conjunction with Section 14, which by implication means you have to consider good faith bargaining, what constitutes an unfair labor practice, which would then mean motive is relevant. Except that it wasn't provided for. And this is probably why they put Section 11 in an entirely separate section. So explain to me why they chose this one to be a strict liability violation where there is no other. Because they wanted to protect the employees. The union members are the very class of people that this scheme is supposed to protect. And to make, you know, oops. Well, just about everything else in the Act is intended to protect the employees. So why is this different? Because it means that if the district measures. It's actually more to protect the union because it's protecting the money you're supposed to be getting out of their checks. You're not protecting the employees. It's the exact opposite of that. It's to protect you, the union, getting your money. It is also to protect the district. See, the union and the district both have financial responsibility for their mistakes under this scheme. We could very easily be here because the union goofed up, sent wrong information to the district, and then the district has damages that the union is now liable for. Immediately upon finding the mistake, the union offered or the district offered to pay. Why was that rejected? I am here on behalf of the labor board, Your Honor. I have no idea what was going through the union's mind when it rejected that, except that these provisions in 11.1 do not provide for that. The union experienced a loss here, Your Honor. Well, the union didn't even know it had a loss until the national or whatever state organization notified it. During that time, the union was representing its employees as it was required to do, and it was doing it with less funding than it was supposed to get. So, yes, you can call it a reimbursement because the union experienced a loss. So they offered to pay in full. In full. They were going to take the deductions that the employees rightfully should have paid, and they were going to take district funds and pay the balance, make you whole. Why would that be declining? Well, the provision does not provide for clawing back money from the employees. What do you care? As long as you're getting your money, what do you care? Whether they have something else they have to address or deal with, or there might be some other cause of action by somebody else because they've used public funds, what do you care? It's not your issue. I'm sorry, by me, you mean the union? Who's the union? Your clients. The board. What do they care if there is a remedy provided? If that remedy causes some other ancillary issue for the district, that's not your problem. That's their problem. The remedy provided here was that if the district, for whatever reason, reading the plain language, 11.1F, if the district, for whatever reason, either failed to deduct or failed to remit, it is required to reimburse the union. And they offered to do that. I beg your pardon? They offered to do that. Only partially. They were going to take the deductions, like they should have, and pay them back. They offered to pay for the people who had left or retired, Your Honor, and then they were going to go back two years after the fact and collection the employees. And the provision doesn't provide for that. But it provides for it to be deducted in the first place, so aren't you splitting hairs? I mean, it should have been deducted earlier. The CBA provides for that.  I'm sorry, the CBA provides for the deductions. Union deductions, doesn't it? Yes, it says that the district should not make deductions. So they do. They're supposed to pay union dues. So they weren't going to be asked to pay anything beyond what they were otherwise obligated to pay by contract. By contract, they're obligated to do that. Well, that's a contract between the union and the employer. The employees are third parties to all of this, and they didn't do anything wrong. Well, employees are always third parties to a union contract. When the legislature wants you to be able to claw money back from third parties, it generally provides that explicitly. For example, if you get unemployment and you actually weren't entitled to it, but the department goofed in giving you your benefits. This isn't a clawback. This is payment of dues that they were supposed to have paid anyway. When money is going to be taken from people, it usually is provided for explicitly, which is why... It was. It was provided in the contract and in the agreement that you had with the district that they would take out the money and remit it to the union. It didn't get taken out. So they've offered, okay, we'll take out the money like we were supposed to, and we'll pay for the others who have already left, so you get... You, the union, get made whole. And that was rejected. Because it would have hurt the employees who stayed, who didn't do anything wrong, who didn't notice that they had... How can they be hurt? Their payment of dues they didn't pay. They tend to be on the low end of the pay scale. Okay, that is such a fallacious argument that I read. I thought, that's ridiculous. She was not arguing for the people, the lower people. She was arguing by the fact that it's going to come out of my check. Sorry, who was arguing? I can't remember. I can't remember the lady's name. You're talking about the union's witness. We understand that you are representing the board, but I've been around for quite a while, and the unfair labor practices that we see and regularly see are in a backroom parlance, let's screw the union. Unfair labor practice, bad thing. Somebody needs to be punished. Somebody is operating in bad faith. Tell me what the logic is in this statute if we read it the way that you want us to. I mean, one of the oldest rules of statutory construction is if it's absurd. The purpose of this is to do what you're supposed to do and not do a bad thing that you're doing on purpose. And we all agree, how purposeful, inadvertent, negligence. That doesn't equate to bad in most areas of the law. But intent wasn't made a part of 11.1. of all of the provisions that require the union to give correct information. Both parties have reciprocal obligations and financial liability. Suppose the union gave the district faulty information and the district suffered financial harm. That's covered. But the union didn't need to do it. That's expressly covered. It's expressly covered, but that, too, is an unfair labor practice. Just by the fact that it happened. The union didn't need to give you wrong information, but it goofed, and now the district has some harm. The union has to make the district hold for whatever that harm was, no matter its intent. Because they expressly provided for that in the statute. It's in there. Both are in there. The union has to transmit correct information to the district. The district then has to correctly process the information that it gets from the union. Both parties are financially liable without fault. It's the way it was written so that the case law that predates that really isn't relevant to this. And the suggestion, too, that the legislature has to amend its finding, it has to issue new findings every time it amends an act, I don't think that would be workable or enforceable, Your Honor. I mean, they said it out in plain language, even though there was no bargaining over this particular thing. I mean, it's true that the board didn't want to call it, but, well, the NLJ called it a strict liability provision. The board didn't necessarily agree with that. It just stated, from the plain language, the General Assembly included nothing in the 11.1 provisions that would make motivation relevant to this kind of unfair labor practice. And this is simply a place in the law where we don't care about people's motivation. If you're speeding, the fact that you didn't know, you were just keeping up with traffic, doesn't matter. It's not a defense to the ticket. If you served alcohol to a minor, it doesn't matter. If the minor had a receding hairline and looked closer to 30 than 20, no motive is relevant there, just the fact that it happened. Good faith is not a defense of the Wage Payment and Collection Act. This is not, whatever you call this, it is no different. There are places where intent is just not relevant. Did you cite in your briefing on behalf of the board any other section of the Act where noncompliance amounts to a per se violation of the duty to bargain or a per se unfair labor practice? Is Your Honor asking any other provision outside of 11.1? Is Your Honor referring to other provisions? I'm asking whether you cited to any other section of the Act where noncompliance amounts to a per se violation of the duty to bargain or a per se unfair labor practice. Yes. 11.1 D and E, this is on page 14. This sets out the obligations that the union has. Those are expressly laid out, what the resolution should be. Yes. That the union is liable for the financial harm that its innocent mistake caused to the district. Here instead, we're supposed to read 11.F in conjunction with section 14. Yes.  But the good faith inquiry is not part of that. 11.E. Yes. In E, the employee organization shall indemnify the educational employer for any damages and reasonable costs incurred for any... That's the specific resolution. I'm saying, do they make reference to unfair labor practice in section 14? Well, the Act doesn't reference section 14. I mean, 11.F doesn't reference section... doesn't explicitly reference section 14. Okay. And, you know, none of this makes motive on the union's part relevant, and I see my time is up, so... If there's anything you want to state in conclusion, you may. We've asked you a lot of questions. I'm sorry, Your Honor. We've asked you a lot of questions. Yeah, I think I got your point, so I appreciate it, Your Honor.  Thank you, Your Honor. I just have a couple brief points I'd like to make. The first is, with respect to the jurisdictional issue, counsel indicated that you have to know they did something in order for the accrual period to begin. And what I want to point out is that the union did know that something occurred. She was indicating that, you know, there's different amounts that could be paid across different pay periods, so how would they know that this one was off? Well, they would know this one was off because there was no payment made. It's not a situation where there could have been some employees that left the district, and so as a result, they weren't deducting dues for those people, so this was, you know, a couple thousand dollars off or something like that. This was a situation where no payment was received, and so the union was on notice that something was wrong. And as a result, the jurisdictional period began in August of 2020 and August of 2021, respectively. On the merits of the unfair labor practice issue, one thing I wanted to point out is that 11.1F says that the failure to deduct and remit dues can be addressed in a couple of different ways. The first, which we've been talking about this whole time, is through an unfair labor practice proceeding. The second, they said, is through grievance arbitration. That's relevant because grievance arbitration is typically the manner in which contractual violations and disputes are addressed between the union and the school district. When there's contractual violation, that's how you address it. The times when contractual violations rise to the level of a violation of 1485 and the duty to bargain in good faith is when the school district obstinately refuses to enforce or comply with the provisions of the collective bargaining agreement. That's why this is relevant to ensure that intent is, in fact, required, because if you have the ability to do it either through grievance arbitration, which they could have because it's part of the contract, or through an unfair labor practice, that demonstrates that you have to repudiate the contract to bring it to the level of an unfair labor practice. That requires bad faith, motive, or intent. None of that is here. We all agree that this is a situation where it was an inadvertent clerical error. And so for those reasons, Your Honors, we would ask that you reverse the Labor Board's opinion. And unless you have any other questions, that's all I wanted to say. I see no questions. Thank you, Counsel. Thank you, Your Honors. We'll take this matter under advisement and await the readiness of our next case.